NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LENDINGTREE, LLC,**
*Plaintiff-Appellant*

v.

**ZILLOW, INC.,**
*Defendant-Cross-Appellant*

**NEXTAG, INC., ADCHEMY, INC.,**
*Defendants*

---

2014-1435, 2014-1531, 2015-1186

---

Appeals from the United States District Court for the Western District of North Carolina in No. 3:10-cv-00439-FDW-DCK, Chief Judge Frank D. Whitney.

---

Decided: July 25, 2016

---

STEPHEN S. KORNICZKY, Sheppard, Mullin, Richter & Hampton LLP, San Diego, CA, argued for plaintiff-appellant. Also represented by MARTIN BADER, MICHAEL MURPHY; EDWARD V. ANDERSON, Palo Alto, CA.

J. DAVID HADDEN, Fenwick & West, LLP, Mountain View, CA, argued for defendant-cross-appellant. Also

represented by TODD RICHARD GREGORIAN, SAINA S. SHAMILOV, CAROLYN CHANG, LYNN PASAHOW; RAVI RAGAVENDRA RANGANATH, San Francisco, CA.

---

Before MOORE, SCHALL, and O'MALLEY, *Circuit Judges.*

SCHALL, *Circuit Judge.*

## DECISION

This is a patent infringement case. LendingTree, LLC ("LendingTree") filed suit against Zillow, Inc. ("Zillow") and other defendants in the United States District Court for the Western District of North Carolina, asserting claims 1 and 6 of U.S. Patent No. 6,385,594 ("the '594 patent") and claims 1, 4, 5, 18–20, and 22–24 of U.S. Patent No. 6,611,816 ("the '816 patent") (collectively, "the patents in suit"). In due course, Zillow moved for summary judgment of invalidity under 35 U.S.C. § 101 with respect to the asserted claims of both patents. The district court delayed ruling on the motion until after trial, at which point the court orally denied it from the bench. Joint Appendix ("J.A.") 11346. Following trial, the jury returned a verdict finding that Zillow and the other defendants did not infringe the asserted claims of the patents in suit and that all claims of the patents in suit were invalid for improper inventorship. *Id.* 7248–51. After entering final judgment based upon the jury's verdict, *id.* 22, the court denied various post-trial motions, *LendingTree, LLC v. Zillow, Inc.*, 54 F. Supp. 3d 444, 466 (W.D.N.C. 2014).

On appeal, LendingTree argues that the district court erred in its construction of four claim terms, in certain of its evidentiary rulings, and in its decision not to vacate the jury's finding of invalidity based upon improper inventorship. It therefore asks us to vacate the final judgment and remand the case for further proceedings.

Zillow cross-appeals the district court's denial of summary judgment of invalidity under 35 U.S.C. § 101.

For the reasons set forth below, we hold that the district court erred in denying Zillow's motion for summary judgment of invalidity of the asserted claims of the patents in suit. In addition, we remand to permit LendingTree, if it chooses to do so, to file a motion under Fed. R. Civ. P. 60(b) to vacate the judgment of invalidity for improper inventorship with respect to the remaining claims of the patents in suit. Our resolution of the case renders moot the issues of claim construction and the district court's evidentiary rulings.

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1). We turn first to Zillow's cross-appeal.

DISCUSSION

I.

A.

The patents in suit "relate[] to a process for coordinating loans on a loan processing computer over the Internet." '594 patent at 1:8–9.[1] According to the '594 patent, traditional methods of applying for a loan were "tedious and time consuming" because there was "no way to apply . . . without physically going to or calling each lender and filling out an application or credit qualification form." *Id.* at 1:34–39. Recognizing that "[a]ll applications required substantially the same information," the inventors sought to overcome those problems by "combin[ing] the vast resources and speed of the Internet with additional

---

[1]   The '816 patent is a continuation of the '594 patent. '816 patent at 1:7–9. Accordingly, because the patents in suit share a common specification, reference to the '594 patent suffices for the purpose of providing background.

knowledge of various lending institution's selection criteria to create a simple mechanism whereby an Internet user can . . . submit a single credit application to a plurality of lending institutions who then make offers to the customer via the Internet." *Id.* at 1:38–43, 1:55–57. The loan-coordination process of the '594 patent includes ten general stages. *Id.* at 2:66–3:1, Fig. 1.

Independent claims 1 and 22 of the '594 patent and '816 patent, respectively, are representative of the claimed subject matter. They provide as follows:

> 1. A method for coordinating an electronic credit qualification form between an Internet user and a plurality of lending institutions via the Internet, comprising the steps of:
>
> a) receiving selection criteria from the plurality of lending institutions;
>
> b) storing the selection criteria in a database;
>
> c) displaying a plurality of documents in a web site;
>
> d) receiving a plurality of credit data sent from the Internet user;
>
> e) applying said credit data to a filter comprising the plurality of selection criteria of the database to select without manual intervention each one of said plurality of lending institutions associated with a match of said credit data to said selection criteria;
>
> f) determining an appropriate transfer method to transmit said electronic credit qualification form to the lending institutions associated with a match of said credit data;
>
> g) transmitting said electronic qualification form comprising said credit data to said plurality of

lending institutions associated with a match of said credit data via said appropriate transfer method, the transmission of said electronic qualification form comprising said credit data occurring without a delay for reception of any credit decisions from said lending institutions;

h) receiving a plurality of positive credit decisions from said plurality of lending institutions associated with a match of said credit data regarding an offer of credit or a loan to the Internet user;

i) *simultaneously displaying the plurality of positive credit decisions to the Internet user on the web site*;

j) receiving via the web site at least one decision from the Internet user regarding at least one of the positive credit decisions, the Internet user's decision comprising an acceptance, denial or request for more information regarding a positive decision for one of said lending institutions associated with a match of said credit data; and

k) transmitting the at least one Internet user's decision to at least one lending institution corresponding with a positive credit decision so that said Internet user can obtain credit or a loan from one of said lending institutions associated with a match of said credit data,

> *whereby said lending institutions associated with a match of said credit data compete with each other for business with the Internet user.*

'594 patent at 7:15–62 (emphases added).

22. A system for coordinating business between a computer user and a plurality of lending institutions comprising:

a processing unit;

a memory storage device; and

a program module, stored in said memory storage device for providing instructions to said processing unit;

said processing unit responsive to said instructions of said program module, operable for

receiving selection criteria from a plurality of lending institutions;

receiving credit data sent from the computer user;

employing the selection criteria to filter the credit data and to automatically select one or more lending institutions from the plurality of lending institutions; and

forwarding the credit data to the selected one or more lending institutions;

*whereby the selected lending institutions compete with each other for business with the computer user.*[2]

'816 patent at 10:1–20 (emphasis added).

LendingTree sued Zillow in the Western District of North Carolina, alleging that Zillow's operation of a "Mortgage Marketplace" on its website infringed claims 1 and 6 of the '594 patent and claims 1, 4, 5, 18–20, and 22–

---

[2]    The district court construed the "whereby" clauses in claims 1 and 22 to mean "the selected lending institutions simultaneously compete by providing offers for credit to the computer user via the [computer network ('816 patent)/Internet ('594 patent)]."  J.A. 12 (alteration in original).

24 of the '816 patent. Zillow denied infringement and asserted various counterclaims and affirmative defenses, based on its view that the patents in suit were neither infringed nor valid. After the case was underway, Zillow moved for summary judgment of invalidity of the asserted claims under 35 U.S.C. § 101. The district court held a hearing on the motion but delayed ruling on it until after trial. The court ultimately denied the motion from the bench without a written decision.[3]

## B.

We review a district court's denial of summary judgment under the law of the regional circuit. *Broad. Innovation, L.L.C. v. Charter Commc'ns, Inc.*, 420 F.3d 1364, 1366 (Fed. Cir. 2005). Under the law of the Fourth Circuit, the denial of summary judgment is reviewed de novo. *Raynor v. Pugh*, 817 F.3d 123, 128 (4th Cir. 2016). Summary judgment is appropriate when the movant shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Patent eligibility under § 101 is an issue of law reviewed de novo. *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).

---

[3] LendingTree agreed at oral argument before us that we may reach the merits of the § 101 dispute, even though the district court did not offer an explanation for its denial of Zillow's summary-judgment motion. Oral Arg. at 18:33–49, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2014-1435.mp3.

To determine whether a patent claims ineligible subject matter, we engage in a two-step process. First, "we determine whether the claims at issue are directed to one of [the] patent-ineligible concepts"—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1296–97 (2012)). "The 'abstract ideas' category embodies 'the longstanding rule' that '[a]n idea of itself is not patentable.'" *Alice*, 134 S. Ct. at 2355 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)) (alteration in original). Although "[t]he Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of the *Mayo/Alice* inquiry[,] . . . both this court and the Supreme Court have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). We know that "fundamental economic and conventional business practices are often found to be abstract ideas, even if performed on a computer." *Id.* (citing *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362–63 (Fed. Cir. 2015)). We also know that a claim directed to an abstract idea is not eligible merely by limiting the invention to a particular field of use or technological environment. *See Alice*, 134 S. Ct. at 2358 (stating that limiting an abstract idea to a particular technological environment, such as a computer, does not confer patent eligibility); *Bilski v. Kappos*, 561 U.S. 604, 612 (2010) (explaining that "limiting an abstract idea to one field of use . . . d[oes] not make the concept patentable").

If we determine that the claims at issue recite an abstract idea, we must proceed to step two, where we analyze whether the claims contain "additional features" that embody an "inventive concept." *Alice*, 134 S. Ct. at 2357. In other words, we "consider the elements of each claim

both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 132 S. Ct. at 1297–98). These "additional features" must be more than "well-understood, routine, conventional activit[ies]." *Mayo*, 132 S. Ct. at 1298.

Zillow contends that the patents in suit are directed to the idea of "comparing credit information to lending criteria" (i.e., a "credit application clearinghouse"). In Zillow's view, that idea represents a fundamental economic practice not meaningfully different from practices previously found by us and the Supreme Court to be abstract and is thus ineligible for patenting under § 101. As for step two, Zillow asserts that the claims at issue merely automate the clearinghouse concept using conventional methods and generic technology and therefore do not present an inventive concept.

According to LendingTree, the claims pass muster at step one of the *Mayo/Alice* framework because they are directed to "a specific method of employing a filter and engendering simultaneous competition among lenders." Regarding step two, LendingTree asserts that the inventive concept here is "simultaneous real-time competition among credit providers in favor of borrowers." This "timing step," LendingTree argues, is "a feature new in the art." In LendingTree's view, the claims of the patents in suit are like those found to be patent eligible in *Diamond v. Diehr*, 450 U.S. 175 (1981).

## C.

We begin our analysis at step one. On its face, representative method claim 1 is directed to an abstract idea; namely, a loan-application clearinghouse or, more simply, coordinating loans. Indeed, claim 1 is directed to a practice similar to "fundamental economic practice[s]" found abstract by the Supreme Court. *Alice*, 134 S. Ct. at 2357. Like the concepts of risk hedging in *Bilski*, 561 U.S. at

611, and intermediated settlement in *Alice*, 134 S. Ct. 2356, the concept of applying for loans and receiving offers is also long prevalent in our financial system. That the patents in suit use a broker (i.e., a computer program on a loan-processing computer, *see* '594 patent at 3:26–30) to organize the process is of no consequence, for "[t]he use of a third-party intermediary (or 'clearing house') is also a building block of the modern economy." *See Alice*, 134 S. Ct. at 2357. We too have held that similar claims are directed toward abstract ideas. *See, e.g., Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1318, 1324 (Fed. Cir. 2016) (finding claims directed to the idea of "anonymous loan shopping" to be abstract); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1331, 1333 (Fed. Cir. 2012) (deeming claims directed to the concept of "processing information through a clearinghouse" to be abstract); *OIP Techs.*, 788 F.3d at 1361–62 (concluding that offer-based price optimization in an e-commerce environment is abstract); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d at 712, 715–16 (finding the claims at issue recited the abstract idea of using advertising as a currency as applied to the particular technological environment of the Internet). Because claim 1 of the '594 patent is directed to an abstract idea, we turn to step two.

We find that claim 1 does not recite any elements that individually, or as an ordered combination, transform the abstract idea of coordinating loans into a patent-eligible application of that idea. "At best, the claim[] describe[s] the automation of [a] fundamental economic concept . . . through the use of generic-computer functions." *OIP Techs.*, 788 F.3d at 1363. It is well settled, though, that automating conventional activities using generic technology does not amount to an inventive concept. *See Alice*, 134 S. Ct. at 2358 (explaining that "if a patent's recitation of a computer amounts to a mere instruction to implement an abstract idea on . . . a computer, that addition cannot impart patent eligibility") (internal alteration,

citation, and quotations omitted); *Intellectual Ventures*, 792 F.3d at 1367 ("claiming the improved speed or efficiency inherent with applying the abstract idea on a computer [does not] provide a sufficient inventive concept"); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) ("[T]he fact that the required calculations could be performed more efficiently via a computer does not materially alter the patent eligibility of the claimed subject matter.").

LendingTree contends that the particular limitation relating to "simultaneous competition" amounts to an inventive concept sufficient to render the claims patent eligible. We do not agree. This court and the Supreme Court have addressed claims with similar limitations and have found that they lack an inventive concept. In *Mortg. Grader*, the representative claim of the patents at issue required a computer system that was configured to enable a borrower "to search [a] database to identify a set of loan packages" from a plurality of lenders and "to compare the loan packages within the set," and that also was configured "to display to the borrower an indication of a total cost of each loan package in the set." *See Mortg. Grader*, 811 F.3d at 1318. Viewed another way, through the claimed computer system, multiple lenders could compete simultaneously for the potential borrower's business. We concluded in that case that the claims did not include an inventive concept. *Id.* at 1324. In *Alice*, "the claimed method require[d] the use of a computer to create electronic records, track multiple transactions, and *issue simultaneous instructions*." 134 S. Ct. 2359 (emphasis added). The Supreme Court found that such claims lacked an inventive concept because they did no more than "simply instruct the practitioner to implement the abstract idea . . . on a generic computer." *Id.* In our view, using a generic computer to display a "plurality of positive credit decisions," as recited in claim 1 of the '594 patent, is not meaningfully different from using a generic com-

puter to display competing loan packages or to issue instructions. Consequently, we think that, like the claims in *Mortg. Grader* and *Alice*, claim 1 is patent ineligible because it does nothing more than facilitate the claimed loan-application process using generic technology.[4]

LendingTree also argues that the claimed invention is comparable to the invention found patent eligible by the Supreme Court in *Diehr*. LendingTree's reliance on *Diehr* is misplaced. Contrary to LendingTree's assertion, the claims at issue are not like those in *Diehr*. The pertinent claim in that case "employed a 'well-known' mathematical equation . . . used . . . in a process *designed to solve a technological problem* in 'conventional industry practice.'" *Alice*, 134 S. Ct. at 2358 (quoting *Diehr*, 450 U.S. at 177, 178) (emphasis added). The claims here, however, are not designed to solve a technological problem. Rather, they merely provide a generic, technological environment (i.e., computers and the Internet) in which to carry out the abstract idea of coordinating loans.[5] The specification

---

[4] Because system claim 22 of the '816 patent does not differ in any meaningful way from method claim 1 of the '594 patent, we conclude that it too is directed to patent-ineligible subject matter. *See Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1342–46 (Fed. Cir. 2013) (finding that system claims fall with patent-ineligible method claims when "the system claims offer no meaningful limitations beyond the method claims"). Additionally, LendingTree does not contend that our analysis should differ for any of the other challenged claims (i.e., claim 6 of the '594 patent and claims 1, 4, 5, 18–20, 23, and 24 of the '816 patent). Consequently, those claims also fall with claims 1 and 22.

[5] Likewise, we also do not think the claims are directed to "improvements in computer-related technology," *Enfish*, 822 F.3d at 1335, or to solving "a challenge par-

underscores this point by emphasizing that the aim of the invention is speeding up the loan-application process by enabling borrowers to avoid "physically going to or calling each lender and filling out an application." *See* '594 patent at 1:34–44.

We have considered all of LendingTree's remaining arguments and have found them unpersuasive. Accordingly, because the asserted claims of the patents in suit are directed to an abstract idea and do not present an "inventive concept," we hold that they are directed to ineligible subject matter under 35 U.S.C. § 101. We therefore *reverse* the district court's denial of Zillow's motion for summary judgment. We turn next to the issue of inventorship.

## II.

As noted, the jury found all claims of the patents in suit invalid for improper inventorship. J.A. 7250. Our conclusion on the § 101 issue—that claims 1 and 6 of the '594 patent and claims 1, 4, 5, 18–20, and 22–24 of the '816 patent are invalid—still leaves a number of claims intact; namely, claims 2–5 and 7–36 of the '594 patent and claims 2, 3, 6–17, and 21 of the '816 patent. We must therefore address inventorship as it relates to those claims.

## A.

After the jury returned its verdict, LendingTree renewed its previous motion for judgment as a matter of law, based on its view that the patents in suit are not invalid for failing to identify the correct inventors. *LendingTree, LLC v. Zillow, Inc.*, 54 F. Supp. 3d 444, 449 (W.D.N.C. 2014). LendingTree also moved to correct

---

ticular to the Internet," *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014).

inventorship of the patents in suit pursuant to 35 U.S.C. § 256.[6] *Id.* at 451. The district court ruled on the motions together, denying both. *See id.* at 449–52. In doing so, the court noted that the jury's verdict form did not specify the particular error(s) on which the jury based its determination of improper inventorship. *See id.* at 451–52. In addition, the court determined that, based on the evidence before it, there were "several combinations of inventors" that the jury could have reasonably concluded should be listed on the patents in suit (instead of the originally listed inventors). *See id.* Concluding that "the inventorship dispute may be resolved by the [U.S. Patent and Trademark Office ("PTO")]," the court "decline[d] to make a determination as to inventorship." *Id.* at 452. Following the court's denial of its § 256 motion, LendingTree petitioned the PTO to correct inventorship by adding James F. Bennett, Jr. as a named inventor. J.A. 12511–12.

On appeal, LendingTree initially asserted that the district court erred by not considering whether inventorship could be corrected. However, after LendingTree filed its opening brief, the PTO issued Certificates of Correction (adding James F. Bennett, Jr. as a named inventor) for the patents in suit.[7] *Id.* 13207–08. In LendingTree's view, the PTO's actions rendered moot the inventorship dispute. LendingTree thus urges that we vacate the jury's finding of improper inventorship. Zillow contends that the jury's general verdict form forecloses a remand because it leaves open the question of whether the jury found that Mr. Stiegler was improperly named as an

---

[6]    When the patents in suit first issued, they both listed two named inventors: Douglas Lebda and Richard Stiegler.

[7]    On May 12, 2016, we took judicial notice of the PTO's issuance of Certificates of Correction.

inventor, that Mr. Bennett was improperly omitted as an inventor, or that both errors occurred.[8]

B.

In light of the PTO's corrections to the patents in suit, we think a remand is appropriate. 35 U.S.C. § 256(b) provides as follows:

> The error of omitting inventors or naming persons who are not inventors *shall not invalidate* the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. § 256 (2012) (emphasis added). In this case, absent a remand, the judgment of invalidity will remain in place, which would appear to violate the letter and spirit of § 256, for one or more alleged errors will have invalidated the patents in suit notwithstanding that they could have been (and in fact might have been) fully corrected. A remand is also consistent with our approach in *Airbus DS Commc'ns, Inc. v. Microdata GIS, Inc.*, (Case No. 15-1037, Dkt. No. 28) (nonprecedential). In that case, the district court entered judgment against Airbus "based on a jury verdict that a co-inventor . . . was omitted from the patent." *Id.* at 2. After Airbus filed its notice of appeal, the PTO issued a Certificate of Correction that added the omitted inventor. *Id.* We granted a limited remand to allow the district court to determine whether to vacate the invalidity judgment pursuant to Fed. R. Civ. P. 60(b). *Id.* As in *Airbus*, we think that, upon motion by

---

[8]    There is no dispute that Mr. Lebda is properly named as an inventor.

LendingTree,[9] the district court in this case should be given the opportunity to consider vacatur.[10]

We do not agree with Zillow that the jury's general verdict form forecloses a remand.  Zillow cites no case establishing that an ambiguous jury form precludes inventorship from being corrected under § 256.  However, given that the district court found "there [were] several combinations of inventors that the jury could have reasonably concluded should be listed on the [patents in suit]," and given that LendingTree did not timely request identification of the inventors by the jury, *LendingTree*, 54 F. Supp. 3d at 451, the district court may decide that vacatur is inappropriate.  *See* FED. R. CIV. P. 60(b) (providing that a district court "may relieve a party . . . from a final judgment" when "[(5)] applying it prospectively is no longer equitable" or there is "(6) any other reason that justifies relief"); *Nat'l Org. for Women v. Operation Rescue*, 47 F.3d 667, 669 (4th Cir. 1995) ("The power of a district court to vacate a judgment under Federal Rule of Civil Procedure 60(b) rests within the district court's equitable powers."); *Am. Games, Inc. v. Trade Prods., Inc.*,

---

9  A motion to vacate a judgment under Rule 60(b)(4)-(6) must be brought "within a reasonable time . . . after the entry of the judgment or order."  FED. R. CIV. P. 60(c)(1).

10  Without a remand, the district court will not have jurisdiction to consider a Rule 60(b) motion.  *S & E Shipping Corp. v. Chesapeake & O. Ry. Co.*, 678 F.2d 636, 641 n.10 (6th Cir. 1982) (explaining that "absent a remand by [an] appellate court, a district court may not decide a [Rule] 60(b) motion to vacate judgment after notice of appeal has been filed"); *see also Russell v. Lane*, 890 F.2d 947, 949 (7th Cir. 1989) (remanding to provide appellant "a reasonable opportunity to file a motion under Rule 60(b)(6) to vacate . . . [a] judgment").

142 F.3d 1164, 1168 (9th Cir. 1998) (explaining that "Rule 60 provides the basis for a district courts' vacation of judgments when the equities so demand"); *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988) (stating that Rule 60(b)(6) "provides courts with authority adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice") (internal quotation marks omitted).

Accordingly, we grant a remand to allow LendingTree to file, and the district court to consider, a motion pursuant to Fed. R. Civ. P. 60(b) to vacate the judgment of invalidity on account of incorrect inventorship.

## CONCLUSION

We hold that claims 1 and 6 of the '594 patent and claims 1, 4, 5, 18–20, and 22–24 of the '816 patent are directed to patent-ineligible subject matter and are therefore invalid. We therefore reverse the district court's denial of Zillow's motion for summary judgement under 35 U.S.C. § 101. At the same time, we remand in order to permit LendingTree to file a motion pursuant to Fed. R. Civ. P. 60 to vacate the judgment of invalidity on account of improper inventorship as to claims 2–5 and 7–36 of the '594 patent and claims 2, 3, 6–17, and 21 of the '816 patent. Our resolution of the case renders moot the issues of claim construction and the district court's evidentiary rulings. We therefore do not reach them.

## AFFIRMED IN PART AND REMANDED IN PART

## COSTS

Each party shall bear its own costs.