Opinion dissenting in part and concurring in part filed by Circuit Judge Linn. ^ WALLACH, Circuit Judge. Appellant Smart Systems Innovations, LLC (“SSI”) sued Appellees Chicago Transit Authority et' al. (collectively, “Ap-pellees”) in the U.S. District Court for. the Northern District of Illinois (“District Court”),' alleging infringement of U.S, Patent Nos. 7,566,003 (“the ’003 patent”), 7,568,617 (“the ’617 patent”), 8,505,816 (“the ’816 patent”), and 8,662,390 (“the ’390 patent”) (collectively, “the Pafents-in-Suit”).[1] Appellees responded by filing a motion for judgment on the pleadings, asserting that various claims of the Patents-in-Suit (“the Asserted Claims”)[2] are patent ineligible under 35 U.S.C. § 101 (2012).[3] The District Court granted Appel-lees’ Motion, holding that the Asserted Claims are directed to an abstract idea and otherwise lack an inventive concept, such that they are patent ineligible under § 101. See Smart Sys. Innovations, LLC v. Chi Transit Auth., No. 1:14-cv-08053, 2015 WL 4184486, at *7 (N.D. Ill. July 10, 2015). The District Court later entered final judgment as to the Asserted Claims pursuant' to Federal Rule of Civil Procedure 54(b).[4] J.A. 1-2. SSI appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (2012). We affirm. Discussion I. Standards of Review We review a district court’s judgment on the pleadings under the law of the regional circuit, here the Seventh Circuit. See RecogniCorp, LLC v. Nintendo Co., 855 F.3d 1322, 1325-26 (Fed. Cir. 2017). The Seventh Circuit reviews de novo1 the entry of judgment on the pleadings. See Barr v. Bd. of Trs. of W. Ill. Univ., 796 F.3d 837, 839 (7th Cir. 2015). In so doing, the Seventh Circuit “tak[es] the facts alleged in the complaint as true and draw[s] all reasonable inferences in favor of the plaintiff.” Matrix IV, Inc. v. Am. Nat’l Bank & Tr. Co., 649 F.3d 539, 547 (7th Cir. 2011) (citation omitted). We review issues “unique to patent law,” including patent eligibility under 35 U.S.C. § 101, consistent with our circuit’s. precedent. Madey v. Duke Univ., 307 F.3d 1351, 1358 (Fed. Cir. 2002). A district court’s determination of patent eligibility under § 101 is an issue of law that we review de novo. See Intellectual Ventures I LLC v. Erie Indem. Co., 850 F.3d 1315, 1326 (Fed. Cir. 2017). II. The Asserted Claims of the Patents-in-Suit Are Patent-Ineligible Under 35 U.S.C. § 101 “Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of’ Title 35 of the United States Code. 35 U.S.C. § 101. “The Supreme Court, however, has long interpreted § 101 and its statutory predecessors .-to contain an implicit exception: laws of nature, natural phenomena, and abstract ideas are not patentable.” Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat’l Ass’n, 776 F.3d 1343, 1346 (Fed. Cir. 2014) (internal quotation marks and citation omitted). The Supreme Court’s decision in Alice Corp. Pty Ltd. v. CLS Bank International provides the framework through which we assess' patent eligibility under § 101. See — U.S. —, 134 S.Ct. 2347, 2354-55, 189 L.Ed.2d 296 (2014). A patent claim falls outside § 101 where (1)’ it is' “directed to” a patent-ineligible concept, i.e., a law of nature, natural phenomenon, or abstract idea, and' (2)[ ] if so, the particular elements of the claim, considered “both individually and ‘as an ordered combination,’ ” do not add enough to “ ‘transform the nature of the claim’ into a patent-eligible application.” Elec. Power Grp., LLC v. Alstom S.A., 830 F.3d 1350, 1353 (Fed. Cir. 2016) (quoting Alice, 134 S.Ct. at 2355). It is against this framework that we analyze the Asserted Claims.[5] A. The Asserted Claims The Patents-in-Suit “tackle” various “problems that had proven intractable to the [mass] transit sector.” Appellant’s Br. 17 (discussing the ’003 and ’617 patents); see id. at 24 (discussing similarly the ’390 and ’816 patents). SSI sought to overcome these problems with inventions designed to implement open-payment fare systems in mass transit networks in the United States. See SSI, 2015 WL 4184486, at *1. “An open-payment fare system allows riders to conveniently and quickly access mass transit by using existing bankcards,” such as debit and credit cards, thereby “eliminat[ing] the need for, and .added operational cost of, dedicated fare-cards,” paper tickets, and tokens. Id.; see, e.g., ’003 patent, Abstract. Entitled “Learning Fare Collection System For Mass Transit,” the ’003 and ’617 patents generally relate to “a system and method for regulating entry in a transit system using information from a bankcard, such as a credit card or debit card.” ’003 patent, Abstract; see ’617 patent, Abstract (similar). Entitled “Public Transit System Fare Processor For-Multi-Balance Funding,” the ’816 and ’390 patents generally relate to “a system and method for processing transfer rides associated with at least one public transit network,” which “preprocess transactions to consolidate or eliminate unnecessary transactions with a financial institution clearing and settlement network.” ’816 patent, Abstract; ’390 patent, Abstract (same).[6] Consistent with the District Court, we treat the following claims from each of the Patents-in-Suit as representative of their content.[7] SSI, 2015 WL 4184486, at *4; see Elec. Power, 830 F.3d at 1352. Claim 14 of the ’003 patent recites: A method for validating entry into a first transit system using a bankcard terminal, the method comprising: downloading, from a processing system associated with a set of transit systems including the first transit system, a set of bankcard records comprising, for each bankcard record in the set, an identifier of a bankcard previously registered with the processing system, and wherein the set of bankcard records identifies bankcards from a plurality of issuers; receiving, from a bankcard reader, bankcard data comprising data from a bankcard currently presented by a holder of the bankcard, wherein the bankcard comprises one of a credit card and a debit card; determining an identifier based on at least part of the bankcard data from the currently presented bankcard; determining whether the currently presented bankcard is contained in the set of bankcard records; verifying the currently presented bankcard with a bankcard verification system, if the bankcard was not contained in the set of bankcard records; and denying access, if the act of verifying the currently presented bankcard with the bankcard verification system results in a determination of an invalid bankcard. ’003 patent col. 151. 50-col. 161. 6. Claim 13 of the ’617 patent recites: A method for validating entry into a first transit system using a bankcard terminal, the method comprising: downloading, from a processing system associated with a set of transit systems including the first transit system, a list of bankcards comprising, for each bankcard in the list, a hash identifier of a bankcard previously presented, by a respective holder of the bankcard, to the processing system, wherein the bankcard comprises one of a credit card and a debit card; receiving, from a bankcard reader, bankcard data comprising data from a bankcard currently presented by a holder of the bankcard; generating a hash identifier based on the bankcard data from the currently presented bankcard, wherein the hash identifier comprises a hash of at least part of the bankcard data; determining whether the currently presented bankcard is contained in the list of bankcards; verifying the currently presented bankcard with a bankcard verification system, if the bankcard was not contained in the list of bankcards; and denying access, if the act of verifying the currently presented bankcard with the bankcard verification system results in a determination of an invalid bankcard. ’617 patent col. 111. 62-col. 12 1. 18. Claim 1 of the ’816 patent recites: A method of funding transit rides associated with at least one public transit network, from a plurality of funding sources, the method comprising: configuring a processor, associated with the at least one public transit network, wherein configuring the processor comprises: storing, in memory, a plurality of balance classes; storing, in the memory, at least one rule for a prioritization of the balance classes; storing, in the memory, at least one fare rule; and maintaining, in the memory, a transit account and a respective plurality of balances; and processing a bankcard presentation record, wherein the bankcard presentation record comprises an identifier to the transit account, and wherein processing the bankcard presentation record comprises: receiving the bankcard presentation record at the processor; searching the memory for the transit account identified by the identifier in the bankcard presentation record; inferring, from at least one of the at least one fare rules, a resultant fare; selecting a balance from the plurality of balances for the transit account by using at least one of the at least one rule for the prioritization of the balance classes; and accounting for a fare by applying the fare to the selected balance. ’816 patent col. 2511. Í1-38, Finally, claim 1 of the ’390 patent recites: A method of using a bank card as an identifying token for time-based mass transit fare products, without using writeable memory on the bank card, the method comprising: processing a timepass record associated with at least one public' transit network, wherein the timepass record comprises an indication of duration and an identifier to a first transit account, and wherein processing the ti-mepass record comprises: receiving, the timepass record representing an advance purchase of a fare product; and indicating the first transit account identified by the timepass record is enabled for a timepass product; processing a first presentation record, wherein the first presentation record comprises a timestamp and an identifier to the first transit account, and wherein processing of the first presentation record comprises: receiving the first presentation record; determining that the first' transit account identified by the identifier in the first presentation record is enabled for a timepass product; and providing a discount associated with the timepass product; and processing a second presentation record, wherein the second presentation record comprises a timestamp and an identifier to a second transit account, and wherein processing of the second presentation record comprises: receiving the second presentation record; and determining that the second transit account identified by the identifier in the second presentation record is not enabled for a timepass product; and applying a non-timepass fare rule. ’890 patent col. 241. 41-col. 251. 5. B. The Asserted Claims Are Directed to an Abstract Idea Under Alice step one, “claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter.” Internet Patents Corp. v. Active Network, Inc., 790 F.3d 1343, 1346 (Fed. Cir. 2015); see McRO, Inc. v. Bandai Namco Games Am. Inc., 837 F.3d 1299, 1313 (Fed. Cir. 2016) (stating that for method claims “a court must look to the claims as an ordered combination, without ignoring the requirements of the individual steps”). “We ... look to whether the claims ... focus on a specific means or method that improves the relevant technology dr are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery.” McRO, 837 F.3d at 1313. The District Court held that, “[stripped of the technical jargon that broadly describes non-inventive elements (e.g., the ‘interfaces’ and ‘processing systems’), and further shorn of the typically obtuse syntax of patents, the patents here really only cover an abstract concept: paying for a subway or bus ride with a credit card.” SSI, 2015 WL 4184486, at *4.[8] The District Court further found that, although the Patents-in-Suit disclose inventions that would allow riders to more quickly and efficiently access, a mass transit network, “the recent case law has reiterated that whatever bells and whistles may be added, when reduced to their core, claims directed to the performance of certain financial transactions—and paying a fare is a financial transaction—must be categorized as involving abstract ideas.” Id. (internal quotation marks and citations omitted). On appeal, SSI argues that, because the ’003 and ’617 patents disclose inventions that “operate in the tangible world” and satisfy a public demand for more convenient travel that did not exist in the prior art, the patents’ claims are not directed to an abstract idea. Appellant’s Br. 38; see id. at 38-40. Moreover, SSI alleges that the ’390 and ’816 patents similarly do not concern an abstract idea because their claims “overcome challenges created by the storage limitations that exist with conventional tangible bankcards.” Id. at 42; see id. at 40-42. SSI’s arguments are unavailing. The Asserted Claims of the ’003 and ’617 patents involve acquiring identification data from a bankcard, using the data to verify the validity of the bankcard, and denying access to a transit system if the bankcard is invalid. See ’003 patent col. 14 1. 58-col. 15 1.14 (claim 1), col. 15 1. 50-col. 161. 6 (claim 14); ’617 patent col. 1111.7-29 (claim 1), col. 11 1. 62-col. 12 1. 18 (claim 13). The Asserted Claims of the ’816 patent involve acquiring identification data from a bankcard and funding a transit ride from one of multiple balances associated with that bankcard. See ’816 patent col. 25 11. 11-38 (claim 1). Moreover, the Asserted Claims of the ’390 patent involve identifying whether a presented bankcard is associated with a timepass (e.g., a monthly subway card) and, if the timepass is found, charging a different fare. See ’390 patent col. 24 1. 41-col. 25 1. 5 (claim 1). Taken together, the Asserted Claims are directed to the formation of financial transactions in a particular field (i.e., mass transit) and data collection related to such transactions. The Asserted Claims are not directed to a new type of bankcard, turnstile, or database, nor do the claims provide a method for processing data that improves existing technological processes. Rather, the claims are directed to the collection, storage, and recognition of data. We have determined that claims directed to the collection, storage, and recognition of data are directed to an abstract idea. See Elec. Power, 830 F.3d at 1353 (stating that we “have treated collecting information ... as within the realm of abstract ideas”); Content Extraction, 776 F.3d at 1347 (surveying previous opinions that found “claims directed to the mere formation and manipulation of economic relations” through “financial transactions” abstract); accord Intellectual Ventures I LLC v. Capital One Fin. Corp., 850 F.3d 1332, 1340 (Fed. Cir. 2017) (discussing abstract idea precedent related to organizing, displaying, and manipulating data). Accordingly, the Asserted Claims are directed to an abstract idea under Alice step one. SSI’s argument that the Asserted Claims are patent eligible because they improve prior systems of fare collection by speeding up the process at the turnstile is unavailing. We have found “that claims purporting to improve the functioning of the computer itself, or improving an existing technological process[,] might not succumb to the abstract idea exception.” En-fish, 822 F.3d at 1335 (internal quotation marks, brackets, and citation omitted). The question in such cases is “whether the focus of the claims is on the specific asserted improvement in computer capabilities” or whether “computers are invoked merely as a tool.” Id. at 1335-36. For example, in DDR Holdings, LLC v. Hotels.com, L.P., we held that claims “necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks” did not merely recite an abstract idea. 773 F.3d 1245, 1257 (Fed. Cir. 2014). More recently, we held in Enfish that claims “directed to a specific improvement to the way computers operate, embodied in [a] self-referential table,” did not fall within the realm of abstract ideas. 822 F.3d at 1336. SSI, however, does not argue that its claims are directed to an improvement in computer technology. Consequently, our decisions in Enfish and DDR Holdings are inapposite. Similarly, in McRO, we held that a “claimed process us[ing] a combined order of specific rules” improved upon existing technological processes, such that it did not recite an abstract idea. 837 F.3d at 1315-16. Here, the Asserted Claims are not directed to specific rules that improve a technological process. Again, the claims recite the collection of financial data from third parties, the storing of that financial data, linking proffered credit cards to the financial data, and allowing access to a transit system based on the financial data. The claims are not directed to a combined order of specific rules that improve any technological process, but rather invoke computers in the collection and arrangement of data. Claims with such character do not escape the abstract idea exception under Alice step one. See RecogniCorp, 855 F.3d at 1327. SSI repeatedly emphasizes that we nevertheless should not find the Asserted Claims directed to an abstract idea because they apply to a particular, concrete field—namely, mass transit. See Appellant’s Br. 38 (“Anyone who has ever passed through a terminal or entry gate for their local subway—or who has slammed a hip into a locked turnstile— knows that such terminals are the antithesis of ‘abstract.’ ”); see id. at 43-44. But, as we have said before, “merely limiting the field of use of the abstract idea to a particular ... environment does not render the claims any less abstract.” Affinity Labs of Tex., LLC v. DIRECTV, LLC, 838 F.3d 1253, 1259 (Fed. Cir. 2016); Capital One Fin., 850 F.3d at 1340 (same). Indeed, that the steps recited in the Asserted Claims are “necessarily” performed “in the physical, rather than purely conceptual, realm ... is beside the point.” Alice, 134 S.Ct. at 2358 (internal quotation marks and citation omitted). SSI also contends ' that the District Court failed to appreciate that, because the Patents-in-Suit disclose inventions claiming “speedier solutions,” the Asserted Claims do not fall within the abstract ideas realm. Appellant’s Br. 51. SSI’s argument is misplaced here because we consider the application of an abstract idea under Alice step two, not Alice step one. See, e.g., Intellectual Ventures I LLC v. Symantec Corp., 838 F.3d 1307, 1315 (Fed. Cir. 2016). SSI’s reliance on decisions from this court concerning obviousness, see Appellant’s Br. 51-52, does not change our conclusion on this point, cf. Synopsys, Inc. v. Mentor Graphics Corp., 839 F.3d 1138, 1151 (Fed. Cir. 2016) (explaining that, although some overlap occurs, the analysis under § 101 differs from that under the other patent-validity statutes). With respect to the ’003 and ’617 patents, the dissent states that those patents are directed not to any financial transaction, but to “the identification of a bank card as authorized for use in accessing a transit system.” Dissent at 1380. That characterization ignores what is actually recited in the asserted claims of the ’003 and ’617 patents. See, e.g., ’003 patent col. 14 1. 66-col. 15 1. 2 (describing use of a bankcard, a product generally used to conduct financial transactions, that provides “data” to a “bankcard reader”); ’617 patent col. 11 11. 14-17 (similar). Our mandate from the Supreme Court under Alice step one is to ascertain what the claims are “directed to,” not the “thrust,” “heart,” or “focus” of the invention, as the dissent argues. Dissent at 1379,1380,1381, 1381. Here, regardless of whether the claims teach a financial transaction, when properly considered, it is evident that the claims are directed to the collection, analysis, and classification of information, and not access alone. See Dissent at 1381 (stating ipse dixit that “[t]he claims 'call for much more in making practical use of data from a conventional bank card to gain access to a transit system”); see id. at 1381-83 (discussing collection of data through the combination of various components of the claimed invention). The dissent also conflates its Alice step one analysis with Alice step two’s inventive concept analysis, ignoring the Supreme Court directive that the Alice .test is a two-step inquiry. Dissent at 1382-83. C. The Asserted Claims Do Not Recite an Inventive Concept The second step of the § 101 analysis requires us to determine whether the claim elements, .when viewed individually and as an ordered combination, contain “an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application.” Alice, 134 S.Ct. at 2357. A claim contains an inventive concept if it “indudets] additional features” that are more than “well-understood, routine, conventional activities.” Id. at 2357, 2359 (internal quotation marks, brackets, and citations omitted). The District Court held that the Asserted Claims lack an inventive concept because they recite general computer and technological components “like ‘processor,’ ‘hash identifier,’ ‘identifying token,’ and ‘writeable memory,’ the technical details of which'are not described.” ■ SSI, 2015 WL 4184486, at’*6. As a result, the District Court held that “[i]nvoking various computer hardware elements, which save time by carrying out a validation function on site rather than remotely, does not change the fact that in substance, the claims are still directed to nothing more than running a bankcard sale—that is, the performance of an abstract business practice.” Id. at *5 (internal quotation marks and citation omitted). We agree. SSI argues that the District Court erred in its analysis under Alice step two. SSI alleges that the Asserted Claims “solv[e] technological problems in conventional industry practice,” such that they disclose an inventive concept. Appellant’s Br. 53 (capitalization modified); see id. at 53-56. It further avers that the Asserted Claims “reflect an unconventional way to. make an electronic process better,” id. at 59, and that the Asserted Claims “address specific technology challenges that arose uniquely in the transit sector,” id. at 61. In support of its position, SSI cites Diamond v. Diehr, 450 U.S. 175, 101 S.Ct. 1048, 67 L.Ed.2d 155 (1981), and DDR Holdings, 773 F.3d 1245. See id. at 53-54. The Asserted Claims fail to provide an inventive concept. The ’003 patent teaches the use of a “processor,” an “interface,”- “memory,” and “data,” including “hash identifier^].”[9] ’003‘ patent col. 14 1. 58-col. 15 1, 14 (claim 1), col. 16 11. 13-18 (claim 16); see .id. col. 15 1. 50-col. 16 1. 6 (claim 14) (discussing the use of, inter alia, “a processing system” and “data”). So too does the ’617 patent. ’617 patent col. 11 11. 7-29 (claim 1); see id. col. 111. 62-col. 12 1. 18 (claim 13) (discussing the use of, inter alia, “a processing system,” “a hash identifier,” and “data”). The ’816 and ’390 patents similarly recite the use of a “processor” and “memory.” ’816 patent col. 25 11.12-38 (claim 1); ’390 patent col. 24 1. 42-col. 25 1. 5 (claim 1); col. 26 11. 29-63 (claim 31). When claims like the Asserted Claims are “directed to an abstract idea” and “merely requir[e] generic computer implementation,” they “do[ ] not move into section 101 eligibility territory.” buySAFE, Inc. v. Google, Inc., 765 F.3d 1350, 1354 (Fed. Cir. 2014) (internal quotation marks and citation omitted); see Capital One Fin., 850 F.3d at 1341 (describing a “processor” as a generic computer component); Mortg. Grader, Inc. v. First Choice Loan Servs. Inc., 811 F.3d 1314, 1324-25 (Fed. Cir. 2016) (discussing the same with respect to an “interface”); Content Extraction, 776 F.3d at 1347-48 (discussing the same with respect to “data” and “memory”). Neither Diehr nor DDR Holdings demonstrate that the Asserted Claims contain an inventive concept. In Diehr, the Supreme Court held that a computer-implemented process for curing rubber was patent eligible because, even though it employed a well-known mathematical equation, it used the equation in a process to solve a technological problem in conventional industry practice. See 450 U.S. at 185-93, 101 S.Ct. 1048. Diehr does not apply when, as here, the claims at issue use generic computer components “in which to carry out the abstract idea.” LendingTree, LLC v. Zillow, Inc., 656 Fed.Appx. 991, 997 (Fed. Cir. 2016) (footnote omitted). In DDR Holdings, we found claims patent eligible under § 101 because, inter alia, they had no pre-Inter-net analog. See 773 F.3d at 1257-59. DDR Holdings does not apply when, as here, the asserted claims do not “attempt to solve a challenge particular to the Internet.” In re TLI Commc’ns LLC Patent Litig., 823 F.3d 607, 613 (Fed. Cir. 2016) (internal quotation marks and citation omitted). We agree with the District Court that the Asserted Claims recite the abstract idea of collecting financial data using generic computer components. The Asserted Claims therefore offer no inventive concept that transforms them into patent-eligible subject matter. D. SSI’s Other Arguments Do Not Demonstrate Patent Eligibility SSI contends that “other indi-cia” prove that the Asserted Claims cover patent-eligible subject matter. Appellant’s Br.- 62 (capitalization omitted). First, SSI argues that the Asserted Claims “do not preempt any field or allegedly abstract idea.” Id. (capitalization modified). However, when a patent’s claims “disclose patent[ jineligible subject matter[,] .., preemption concerns are fully addressed and made moot.” Ariosa Diagnostics, Inc. v. Sequenom, Inc., 788 F.3d 1371, 1379 (Fed. Cir. 2015). Second, SSI contends that the Asserted Claims “satisfy the machine- or[-]transformation test.” Appellant’s Br. 64. The machine-or-transformation test “can provide a useful clue in the second step of the Alice framework,” but it “is not the sole test governing § 101 analyses.” Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709, 716 (Fed. Cir. 2014) (internal quotation marks and citation omitted). Under that test, “[a] claimed process can be patent ]eligible-under § 101 if,” inter alia, “it is tied to a particular machine or apparatus.” Id. (internal quotation marks and citations omitted). In. other words, the subject patent must disclose the use of an apparatus specific to the claimed invention. See id. The Asserted Claims, by contrast, disclose the use of generic computer components and machinery. See ’003 patent col 14 1. 58-col. 15.1. 14 (claim 1), col. 16 11. 13-18 (claim 16); ’617 patent col. 11 U. 7-29 (claim 1); ’816 patent col. 2511.12-38 (claim 1); ’390 patent col. 24 1. 41-col. 25 1. 5 (claim 1), col. 26 11. 29-63 (claim 31). That is not enough to find that the Asserted Claims contain an inventive concept. See Ultramercial, 772 F.3d at 716 (holding that a claim does not pass the machine-or-transformation test if it is “not tied to any particular novel machine or apparatus, only a general purpose computer”), Conclusion We have considered SSI’s remaining arguments and find them unpersuasive. Accordingly, the Final Judgment of the U.S. District Court for the Northern District of Illinois is AFFIRMED . The suit below involved another patent, U.S'. Patent No. 5,828,044, that is not at issue here. . The Asserted Claims include claims 1-4, 6-7, 9, 14-18, 22-26, 29-30, 34, 37-40, 44-47, 49, 51, 58-59, and 68 of the ’0Ó3 patent; ■ claims 1, 6, 10, 13-15, 21-22, 28-29, and 32-36 of the ’617 patent; claims 1-2, 4-6, 8-13, 21, 24-26, 28, and 31-34 of the '816 patent; and claims 1, 4-5, 7-10, 13-19, 22, 25, 27-28, and 31 of the '390 patent. J.A. 177 n.5. .Congress did not amend § 101 when.it passed the Leahy-Smith America Invents Act. See generally Pub. L. No. 112-29, 125 Stat. 284 (2011). . Rule 54(b) states that "[w]hen an action presents more than one claim for relief .... the court may direct entry of a final judgment as to one or more, but fewer than all, claims ... only if the court expressly determines that there is no just reason for delay.” . The dissent states that we "engag[e] in a reductionist exercise” that "ignor[es] the limitations of the claims in question.” Dissent at 1376. We apply the test established by the Supreme Court as articulated in Alice because we are not permitted to do otherwise, even if we were to agree with some of the frustrations expressed by the dissent as to existing § 101 precedent. See, e.g., Dissent at 1376-79. That we may disagree with the dissent whether the Asserted Claims are patent-eligible does not mean we have ignored the content of those claims. . The Patents-in-Suit belong to the same patent family. The ’390 patent is a continuation of the application that led to the '816 patent, which in turn is a continuation of the application that led to the '003 patent, and the '003 patent is a continuation-in-part of the application that led to the '617 patent. . SSI contests the District Court's decision to treat claim 14 of the '003 patent and claim 13 of the ’617 patent as representative, alleging that we instead should look to claim 1 in each patent and certain dependent claims. Appellant’s Br. 34-36. However, SSI does not identify a meaningful difference between the claims analyzed by the District Court, which are method claims, and claim 1 in the patents, which are system claims, and the contested dependent claims. See id. Indeed, the District Court observed that "all of the concepts described” in claim 1 of the patents "are included (indeed in fuller detail) in the” claims it treated as representative, SSI, 2015 WL 4184486, at ⅜4, a conclusion supported by the patents’ text, compare ’003 patent col. 14 1. 58-col. 15 1. 14 (claim 1), and '617 patent col. 11 11. 7-29 (claim 1), with '003 patent col. 15 1. 50-col. 16 1. 6 (claim 14), and '617 patent col. 111. 62-col. 12 1. 18 (claim 13). "Because the [relevant] system claim[s] and method claim[s]” in the '003 and '617 patents "contain only minor differences in terminology but require performance of the same basic process, ... they should rise or fall together.” Accenture Glob. Servs., GmbH v. Guidewire Software, Inc., 728 F.3d 1336, 1344 (Fed. Cir. 2013) (internal quotation marks, brackets, and citation omitted). In any event, our analysis covers claim 1 of each patent and the disputed dependent claims for purposes of completeness. SSI does not challenge the District Court’s decision to treat claim 1 of each of the '816 and ’390 patents as representative. SSI also contests the District Court’s purported failure to independently consider the eligibility of claims 18 and 19 in the '390 patent, which require a "token reader.” Appellant’s Br. 36 (discussing ’390 patent col. 25 11. 46-54 (claims 18—19)). SSI, however, equates the recited "token reader” to a "bankcard reader,” id., which the District Court considered in its analysis, see SSI, 2015 WL 4184486, at *4, *6. . SSI avers that the District Court impermis-sibly "chopp[ed] the [Asserted Claims] down to an unrecognizable gist” by categorizing them as directed ■ to financial transactions. Appellant’s Br. 47; see id. at 47-48. This court has warned against abstracting the claims at too high a level. See Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1337 (Fed. Cir. 2016) ("[Describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule.”), The District Court here, as we have instructed, looked to the language of the claims to discern the character of the patent, See SSI, 2015 WL 4184486, at *1-2. Even if it had oversimplified the claims, though, we find the legal conclusion reached correct under our de novo standard of review. ' . A "hash identifier" consists of data extracted from a bankcard to create a "digital fingerprint” of the card that a bankcard terminal processor uses to identify the card in question. ’003 patent col, 11 11. 51-58, col. 12 11. 21-23. SSI contends that certain dependent claims in the '003 and '390 patents instruct the use of hashing, such that those dependent claims are "more concrete and narrow[er] than” the independent claims in those patents. Appellant's Br. 35-36. The operative'test here does not require concreteness and narrowness, see Alice, 134 S.Ct. at 2355, rather, the claims must have an inventive concept. A hash identifier is a generic and routine concept that does not transform the claims to a patent eligible application of .the abstract idea.