NOTE:  This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

_____

**WESTERN EXPRESS BANCSHARES, LLC,**
*Plaintiff-Appellant*

**v.**

**GREEN DOT CORPORATION,**
*Defendant-Appellee*

_____

2020-1079

_____

Appeal from the United States District Court for the Southern District of New York in No. 1:19-cv-04465-DLC, Senior Judge Denise Cote.

_____

Decided:  July 14, 2020

_____

ANDREW SOL LANGSAM, Pryor Cashman LLP, New York, NY, for plaintiff-appellant.  Also represented by SMITH S. PIYANAN.

ADAM R. BRAUSA, Durie Tangri LLP, San Francisco, CA, for defendant-appellee.  Also represented by ANDREW LOUIS PERITO.

_____

Before MOORE, LINN, and CHEN, *Circuit Judges.*

PER CURIAM.

Western Express Bancshares, LLC ("Western Express") appeals the dismissal on the pleadings of its complaint alleging infringement of Western Express's U.S. Patent No. 8,498,932 ("'932 patent") by Green Dot Corporation ("Green Dot"). *Western Express Bancshares, LLC v. Green Dot Corp.*, No. 19-cv-4465 (S.D.N.Y. Oct. 2, 2019) ("District Court Op."). Because the '932 patent claims patent ineligible subject matter under 35 U.S.C. § 101, we affirm.[1]

Patent eligibility is ultimately a question of law, that may contain underlying fact issues. *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1165 (Fed. Cir. 2019). Patent eligibility may, however, be susceptible to judgment on the pleadings. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 166 (Fed. Cir. 2018) ("Like other legal questions based on underlying facts, this question may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law.").

The Supreme Court and this court consistently hold that "fundamental economic practice[s]" are not patent eligible. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 219 (2014) (invalidating as patent ineligible idea of intermediated settlement); *Bilski v. Kappos*, 561 U.S. 593, 611 (2010) (financial risk hedging); *Solutran*, 931 F.3d at 1166 (crediting a merchant account as early as possible while electronically processing a check); *Mortgage Grader, Inc. v.*

---

[1]    The district court granted summary judgment based on both a failure to plead facts sufficient to state a plausible claim of infringement and invalidity due to patent ineligibility. Because the validity issue resolves the appeal, we need not and do not address infringement.

First Choice Loan Servs. Inc., 811 F.3d 1314, 1324 (Fed. Cir. 2016) (anonymous loan shopping); OIP Techs., Inc. v. Amazon.com Inc., 788 F.3d 1359, 1360 (Fed. Cir. 2015) (automatic price optimization); Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709, 715 (Fed. Cir. 2014) (using advertising as a form of exchange). We have applied this rule even where the financial transaction claimed includes physical components. See Solutran, 931 F.3d at 1168 ("[T]he physicality of the paper checks being processed and transported is not by itself enough to exempt the claims from being directed to an abstract idea."); Content Extraction & Transmission LLC v. Wells Fargo Bank, Nt. Ass'n, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (rejecting contention that claims directed to a method for scanning checks to collect and store their data were non-abstract because of the physicality of the scanner).

Claim 1 of the '932 patent reads, in full:

A method of funds transfer comprising the steps of:

a. distributing at least one of a plurality of money account cards having specified capabilities to a retailer, each money account card having information associated with a predetermined account with one or more financial institutions, the retailer distributing the money account card to a purchaser thereof;

b. receiving funds for allocation to the predetermined account, said funds being received from the purchaser of said money account card from the retailer;

c. distributing at least a portion of the funds received into said predetermined account to a holder of the at least [sic] one money account card; and

d. permitting the customer to furnish personal information of the holder other than a PIN, by communicating with the holder through an ATM, Internet connection or telephone call, and in response,

> activating or altering a previously dormant capability of the at least [sic] one money account card apart from withdrawal of funds. [2]

'932 patent, col. 9, ll. 49–67.

The first three steps describe the basic concept of a payment card, and the last step merely describes the ability to adjust the financial relationship between the purchaser and the card provider from one conventional form to other conventional forms through a communication providing personal information. We agree with the district court that under the first step of Alice, claim 1 is thus directed to a "method of funds transfer" using a payment card.[3] District Court Op. at 12. Indeed, the '932 patent itself repeatedly characterizes the invention as "relat[ing] to a money transfer method." '932 patent, col. 2, ll. 37; id. at col. 2, l. 10 ("funds transfer"); id. at col. 2, l. 19 ("funds transfer"); id. at col. 1, ll. 55–58 (noting desirability of "a method and/or system of providing and retrieving money transfers between a customer and recipient through an automated networked method"); id., Abstract ("a method of funds transfer"). This is a "fundamental economic practice long

---

[2]    Western Express does not separately argue the other claims in the '932 patent, nor contest the district court's determinations that independent Claims 17 and 29 are "substantially similar to Claim 1," and the dependent claims "do not add significant limitations to Claim 1." *District Court Op.* at 17.

[3]    The district court also characterized the claims as directed to "the receipt, storage, and distribution of money by, in, and through existing technologies like stores, banks, and ATMs, the internet or telephone." *See District Court Op.* at 15. We consider this as the same characterization as the shorthand characterization noted above. Both characterizations result in the same conclusion of patent ineligibility.

prevalent in our system of commerce" and, as such, is a patent ineligible abstract idea. *Alice*, 573 U.S. at 219.

Western Express first argues that the '932 patent claims solve several problems associated with prior art money account cards: creating a bank account without an approval process, allowing the immediate purchase of goods, and allowing the purchaser to alter the functionality of the card after the card is already connected to a bank account. The first two of these "advantages" are just the conventional benefits of a payment card. The ability to alter a financial relationship through communication between the parties is a fundamental characteristic of financial relationships.

Western Express's contention that the district court, in quoting from this court's decision in *Smart Systems*, did not understand the claimed invention has no merit. *See District Court Op.* at 14–15 ("Thus, the claim recites 'the collection of financial data from third parties, the storing of that financial data, linking proffered credit cards to the financial data, and allowing access . . . based on the financial data' to unspecified, altered features of traditional money cards" (quoting *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1372 (Fed. Cir. 2017)). Nothing in the district court's quotation from *Smart System*s can properly be read to suggest or imply that the steps of the claimed invention were the same as those in *Smart Systems*. *Id.* To the contrary, the district court was simply making the point that, just as in *Smart Systems*, "claims that are directed to the collection, storage, and recognition of data are directed to an abstract idea" and do not effect a transformation. *Id.* at 15 (citing *Smart Systems*, 873 F.3d at 1373). The only potential "transformation" claimed is a transformation in the legal and financial obligations between the parties, which itself is abstract. *See Ultramercial*, 772 F.3d at 717. We agree with the district court that the capability of increasing the functionality of the card to

allow for other financial transactions between the parties does not effect a transformation.

Western Express argues that the fact that the claims require a physical object—the payment card—renders the claims directed to patent eligible matter. We disagree. That position is precluded by this court's holding in *Smart Systems*, where we held that the use of a bank card to access public transport was a patent ineligible abstract idea. *Smart Systems*, 873 F.3d at 1373 ("[T]hat the steps recited in the Asserted Claims are 'necessarily' performed 'in the physical, rather than purely conceptual, realm . . . is beside the point'" (citing *Alice*, 573 U.S. at 224)). *See also Solutran*, 931 F.3d at 1168; *Content Extraction*, 776 F.3d at 1347.

Turning to the second step of *Alice*, nothing in the claims provides the requisite inventive concept to save the claim from ineligibility. The '932 patent "simply instruct[s] the practitioner to implement the abstract idea with routine, conventional activity." *See Solutran*, 931 F.3d at 1169 (quoting *Ultramercial*, 772 F.3d at 715). Nothing in the '932 patent, either in the claim limitations themselves or in their ordered combination goes beyond routine, conventional activity. The patent itself describes the recited component parts as present in the prior art: credit cards with preset credit limits, '932 patent, col. 1, ll. 20–33; authorization mechanisms, *id.* at col. 2, ll. 54–58; and communications mechanisms by which the relationship may be changed, *id.* at col. 5, l. 65 – col. 6, l. 6. The '932 patent does not describe any new money transfer techniques, and Western Express does not argue that by the May 2002 priority date, payment cards and or money transfers were in any way unconventional. Indeed, Western Express does not identify any components that were not conventional by the priority date.

Nor does the ordered combination of limitations provide the inventive concept. As Green Dot notes, Western

Express failed to make this argument below.  Western Express does not contest this assertion in its Reply Brief.  This argument is therefore waived.  *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1295 (Fed. Cir. 2009) (arguments not brought below are waived).  In any event, Western Express merely argues that its invention is "entirely different from the steps for conventionally opening, obtaining and using a traditional account at a bank." Western Express Br. at 57.  But the absence of the exact invention in the prior art does not prove the existence of an inventive concept.  Here, Western Express has claimed a fundamental economic practice of transferring money through a payment card.  This abstract idea is not patent eligible.

**AFFIRMED**