# United States Court of Appeals for the Federal Circuit

---

**MORTGAGE GRADER, INC.,**
*Plaintiff-Appellant*

**v.**

**FIRST CHOICE LOAN SERVICES INC., NYLX, INC.,**
*Defendants-Appellees*

---

2015-1415

---

Appeal from the United States District Court for the Central District of California in No. 8:13-cv-00043-AG-AN, Judge Andrew J. Guilford.

---

Decided: January 20, 2015

---

CRAIG R. KAUFMAN, TechKnowledge Law Group LLP, Redwood City, CA, argued for plaintiff-appellant. Also represented by MICHAEL CHAOCHA TING.

REBECCA JEAN STEMPIEN COYLE, Levy & Grandinetti, Washington, DC, argued for defendants-appellees. Also represented by PAUL GRANDINETTI.

---

Before O'MALLEY and TARANTO, *Circuit Judges*, and STARK, *Chief District Judge.**

STARK, *Chief District Judge.*

This case involves patent claims directed to systems and methods for assisting borrowers to obtain loans. Plaintiff-Appellant Mortgage Grader, Inc. ("Mortgage Grader") appeals two decisions of the district court. First, Mortgage Grader appeals the district court's denial of its motion to strike Defendants-Appellees First Choice Loan Services, Inc. and NYLX, Inc.'s ("Appellees") patent-ineligibility defense. Appellees raised patent ineligibility as a defense in their answer, then dropped it in their initial invalidity contentions, only to add it back in their final invalidity contentions. *See Mortgage Grader, Inc. v. Costco Wholesale Corp.*, 2014 WL 10763261, at *6 (C.D. Cal. Oct. 27, 2014) ("*Mortgage Grader I*"). Second, Mortgage Grader appeals the district court's grant of Appellees' motion for summary judgment that the asserted claims are patent-ineligible. *See Mortgage Grader, Inc. v. Costco Wholesale Corp.*, 89 F. Supp. 3d 1055, 1065 (C.D. Cal. 2015) ("*Mortgage Grader II*"). Mortgage Grader contends that the district court improperly resolved factual disputes against it and erred in its application of 35 U.S.C. § 101 ("§ 101").

For the reasons set forth below, we affirm.

BACKGROUND

The patents-in-suit, U.S. Patent Nos. 7,366,694 ("'694 patent") and 7,680,728 ("'728 patent"), relate to "financial transactions including a method for a borrower to evaluate and/or obtain financing, e.g., a loan." '694 patent

---

*    The Honorable Leonard P. Stark, Chief District Judge, United States District Court for the District of Delaware, sitting by designation.

col. 1, ll. 19–21; '728 patent col. 1, ll. 17–19. The '694 patent is a continuation-in-part of the '728 patent.[1] Mortgage Grader asserts claims 1, 2, and 19 of the '694 patent and claim 6 of the '728 patent.

Claim 1 of the '694 patent is representative:

A computer-implemented system for enabling borrowers to anonymously shop for loan packages offered by a plurality of lenders, the system comprising:

a database that stores loan package data specifying loan packages for home loans offered by the lenders, the loan package data specifying, for each of the loan packages, at least a loan type, an interest rate, and a required borrower credit grading; and

a computer system that provides:

a first interface that allows the lenders to securely upload at least some of the loan package data for their respective loan packages to the database over a computer network; and

a second interface that prompts a borrower to enter personal loan evaluation information, and invokes, on a computer, a borrower grading module which uses at least the entered personal loan evaluation information to calculate a credit grading for the borrower, said credit grading being

---

[1] The '694 patent's specification contains the entirety of the '728 patent's specification and adds to it further embodiments disclosed in Figures 3 and 4 and described in accompanying text.

distinct from a credit score of the borrower, and being based on underwriting criteria used by at least some of said lenders;

wherein the second interface provides functionality for the borrower to search the database to identify a set of loan packages for which the borrower qualifies based on the credit grading, and to compare the loan packages within the set, including loan type and interest rate, while remaining anonymous to each of the lenders and without having to post a request to any of the lenders, said second interface configured to display to the borrower an indication of a total cost of each loan package in the set, said total cost including costs of closing services not provided by corresponding lenders.

Claim 2 of the '694 patent depends from claim 1, adding only that "the second interface comprises a set of web pages of a web site." Independent claim 19 recites a "computer-implemented method" comprising certain steps. Claim 6 of the '728 patent recites a "method of assisting a borrower in obtaining a loan" comprising certain steps.

In January 2013, Mortgage Grader sued Costco Wholesale Corporation ("Costco") for infringement of the patents-in-suit.[2] On May 23, 2013, Mortgage Grader amended its complaint to add Appellees as defendants. After the parties stipulated to extend the time for Appellees to respond to the amended complaint, Appellees filed their answer on October 14, 2013. In it, they asserted as

---

[2] The parties stipulated to the dismissal of Costco in January 2015.

affirmative defenses and counterclaims that both the '694 and '728 patents failed to claim patent-eligible subject matter.

In the meantime, on August 30, 2013, Judge Andrew J. Guilford of the Central District of California, who presided over the proceedings below, ordered that his recently issued Standing Patent Rules ("S.P.R.s") would apply to this case. Judge Guilford developed his S.P.R.s "based largely on information obtained from over 100 patent practitioners and professors, a review of all the other local patent rules, and a review of related literature." J.A. 64. The S.P.R.s are intended "to reduce transaction costs and increase procedural predictability," while also being as "outcome neutral and as concise as possible." *Id.*

Pertinent to this appeal is the S.P.R.s' requirement that a party opposing a claim of patent infringement must serve invalidity contentions. A party's initial invalidity contentions are due after the court conducts a scheduling conference—a conference which is held after the party asserting infringement produces documents and discloses its asserted claims and infringement contentions. Pursuant to S.P.R. 2.5, the initial invalidity contentions must include, *inter alia*, "[a]ny grounds of invalidity based on 35 U.S.C. § 101 . . . of any of the asserted claims." J.A. 67. Consistent with S.P.R. 2.5, on December 20, 2013, Appellees served invalidity contentions, which included the statement: "Defendants do not present any grounds of invalidity based on 35 U.S.C. § 101 . . . of any of the asserted claims at this time. The final claim construction may require such an assertion of invalidity." J.A. 332–33.

The S.P.R.s impose further obligations that are triggered by the district court's issuance of an order construing claim terms. In particular, the party alleging infringement must serve final infringement contentions and expert reports regarding issues on which it bears the

burden of proof. Thereafter, a party opposing a claim of patent infringement must serve its final invalidity contentions and expert reports regarding issues on which it bears the burden of proof. In particular, S.P.R. 4.2.2 requires service of:

> A statement [by the party] that its S.P.R. 2.5 contentions are its Final Invalidity Contentions, or in the alternative, Final Invalidity Contentions that amend its S.P.R. 2.5 contentions. A party serving Final Invalidity Contentions that amend its prior contentions shall also provide a redline against its prior contentions and a statement of reasons for each amendment. *Amendments are subject to a good cause standard* but do not require prior Court approval where they are made due to a claim construction by the Court different from that proposed by the party seeking amendment, or recent discovery of material prior art that was not discovered, despite diligent efforts, before the service of the [initial] Invalidity Contentions.

J.A. 71 (emphasis added).

Here, the district court issued its claim construction order on April 18, 2014, and then agreed to the parties' request to extend certain deadlines. Appellees timely served their final invalidity contentions on August 15, 2014. In their final contentions, Appellees stated:

> The Defendants informed the Plaintiff's counsel of the intention to challenge the validity of the '694 and '728 patents under *Alice Corp. Pty., Ltd. v. CLS Bank International et al.*, 134 S. Ct. 2347, 2014 U.S. LEXIS 4303 (2014). The use of the Elite Agents formal application, which was rejected in part under 35 U.S.C. § 101, and the newspaper Mortgage Rate Charts are expected to be the

primary basis for this challenge.[3]    The good cause for this revision to this statement of Final Invalidity Contentions is caused by the Supreme Court's decision issuing after the Defendant[s'] Initial Invalidity Contentions.

J.A. 151.

Mortgage Grader moved to strike Appellees' § 101 defense, arguing that Appellees had not shown good cause for injecting the defense back into the case after dropping it in their initial invalidity contentions.  Appellees responded that the Supreme Court's decision in *Alice*, which was issued on June 19, 2014, constituted good cause for the amendment.  The district court agreed with Appellees and denied Mortgage Grader's motion.  *Mortgage Grader I*, 2014 WL 10763261, at *7.

Thereafter, Appellees filed a motion for summary judgment that the asserted claims are patent-ineligible under § 101.  Both sides filed expert reports in support of their § 101 positions.  In analyzing the motion, the district court applied the two-part test for patent eligibility set forth in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289, 1297 (2012), as clarified by *Alice*.  The court concluded that all of the asserted claims are directed to the abstract idea of "anonymous loan shopping" and that they include no "inventive concept."  *Mortgage Grader II*, 89 F. Supp. 3d at 1063–65.  Accordingly, the court entered summary judgment for Appellees, as Mortgage Grader could not prove that Appellees infringed any valid patent claim.

Mortgage Grader filed a timely appeal.  We have jurisdiction under 28 U.S.C. § 1295(a)(1).

---

[3]    The prior art references cited in this sentence were disclosed elsewhere in Defendants' final invalidity contentions.

DISCUSSION

Mortgage Grader asks us to reverse the district court's grant of summary judgment for Appellees and remand this case for further proceedings. Specifically, Mortgage Grader contends that the district court should have granted its motion to strike, thereby precluding Appellees from proceeding with their § 101 defense. Mortgage Grader also insists that the district court erred in granting summary judgment by improperly resolving factual disputes and then misapplying the *Mayo/Alice* test for patent eligibility. We address each of these issues in turn.

I

Judge Guilford's Standing Patent Rules are similar to the Patent Local Rules adopted by the Northern District of California and many other districts. Like Patent Local Rules, the S.P.R.s "are essentially a series of case management orders that fall within a district court's broad power to control its docket and enforce its order." *Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1035 (Fed. Cir. 2015). District courts have inherent power to manage their own docket, *see, e.g.*, *Ryan v. Gonzales*, 133 S. Ct. 696, 708 (2013); *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426 (Fed. Cir. 1988), and are authorized to "consider and take appropriate action" to facilitate the "just, speedy, and inexpensive disposition" of all matters before them. Fed. R. Civ. P. 16; *see also* Fed. R. Civ. P. 1. Judge Guilford's creation and adoption of his S.P.R.s fall squarely within this broad authority.

Since the S.P.R.s are "unique to patent cases and have a close relationship to enforcement of substantive patent law, we proceed to review their validity and interpretation under Federal Circuit law." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364–65 (Fed. Cir. 2006). "[T]his court defers to the district court when interpreting and enforcing local rules so as not to frus-

trate local attempts to manage patent cases according to prescribed guidelines." *Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 774 (Fed. Cir. 2002). In particular, a "district court's application of its local rules is reviewed under the standard of abuse of discretion." *Keranos*, 797 F.3d at 1035.

> In reviewing a district court's exercise of discretion, this court determines whether (1) the decision was clearly unreasonable, arbitrary, or fanciful; (2) the decision was based on an erroneous conclusion of law; (3) the court's findings were clearly erroneous; or (4) the record contains no evidence upon which the court rationally could have based its decision.

*Genentech*, 289 F.3d at 774 (internal quotation marks omitted).

S.P.R. 4.2.2 requires "good cause" for amendments to invalidity contentions submitted as final invalidity contentions (other than amendments based on claim construction or recent discovery of material prior art). J.A. 71.[4] In this context, a prerequisite to good cause is a showing of diligence. *See O2 Micro*, 467 F.3d at 1366. The party seeking to amend its contentions bears the burden of proving it acted with diligence. *See id.*

---

[4] As the S.P.R.s expressly contemplate amendment of initial invalidity contentions upon a showing of good cause, Mortgage Grader's argument that Appellees "waived" their § 101 defense by not including it in their initial invalidity contentions is meritless. (*See* Appellant's Br. 20.) Moreover, as we have stated, "refusing to allow any amendment to contentions based on new information developed in discovery could be contrary to the spirit of the Federal Rules." *O2 Micro*, 467 F.3d at 1366.

In applying S.P.R. 4.2.2, the district court found that generally a party cannot claim diligence when it includes a defense in its answer, fails to include the defense in initial invalidity contentions, and many months later adds the defense to its final contentions. *See Mortgage Grader I*, 2014 WL 10763261, at *6. While the court acknowledged that "an argument can be made that *Alice* is only a modest advance," it concluded that "*Alice* did provide significant additional clarity on the effect, or lack of effect, of requiring the use of a computer in the claims." *Id.* at *7. Ultimately, the court concluded that, "[i]n short, *Alice* represents a big enough change to justify including a new § 101 argument in Defendants' Final Invalidity Contentions." *Id.*

Mortgage Grader argues that the district court abused its discretion by failing to strike Appellees' § 101 defense from their final invalidity contentions. Mortgage Grader's primary basis for this argument is its claim that the Supreme Court's decision in *Alice* neither created a new defense nor changed the law. On these grounds, Mortgage Grader claims the decision in *Alice* cannot be a basis for finding good cause to amend invalidity contentions. We find no abuse of discretion in the court's ruling.

In *Alice*, the Supreme Court held that "merely requiring generic computer implementation fails to transform [an] abstract idea into a patent-eligible invention." 134 S. Ct. at 2352. We recognized the significance of *Alice* in *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1354–55 (Fed. Cir. 2014), in which we stated that *Alice* "made clear that a claim directed to an abstract idea does not move into § 101 eligibility territory by merely requiring generic computer implementation" (internal quotation marks omitted).

The impact of *Alice* is also illustrated by our decision in *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014) ("*Ultramercial III*"). Ultramercial had sued

WildTangent for infringement of U.S. Patent No. 7,346,545, a patent directed to allowing consumers to view copyrighted media products on the Internet at no cost in exchange for viewing an advertisement. *See id.* at 712. When the case was first before us, in 2011, we reversed the district court's grant of WildTangent's Rule 12(b)(6) motion to dismiss, holding that "as a practical application of the general concept of advertising as currency and an improvement to prior art technology, the claimed invention is not so manifestly abstract as to override the statutory language of § 101." *Ultramercial, LLC v. Hulu, LLC*, 657 F.3d 1323, 1330 (Fed. Cir. 2011) ("*Ultramercial I*") (internal quotation marks omitted). The Supreme Court granted WildTangent's petition for certiorari, vacated our order, and remanded for further consideration in light of *Mayo*. *Ultramercial III*, 772 F.3d at 713. On remand, we again reversed the district court, holding yet again that the claims were patent-eligible. *Ultramercial v. Hulu*, 722 F.3d 1335, 1354 (Fed. Cir. 2013) ("*Ultramercial II*"). Once more, the Supreme Court granted WildTangent's petition for certiorari, vacated our order, and remanded, this time for further consideration in light of *Alice*. *Id.* On this further remand, with the "added benefit of the Supreme Court's reasoning in *Alice*," we affirmed the district court and found the claims to be not patent-eligible. *Id.* Our conclusion was expressly based on *Alice*'s holding that "adding a computer to otherwise conventional steps does not make an invention patent-eligible." *Id.* at 713, 716–17.

*Ultramercial III* demonstrates that a § 101 defense previously lacking in merit may be meritorious after *Alice*. This scenario is most likely to occur with respect to patent claims that involve implementations of economic arrangements using generic computer technology, as the claims do here. For example, the asserted claims of the '694 patent require use of a "computer system" or "computer network" for facilitating anonymous loan shopping,

and the asserted claim of the '728 patent requires "programmatically generating" and uses a "network" for shopping for loans. In this context, it was not an abuse of discretion to allow Appellees to inject a § 101 defense into the case after *Alice*.

Mortgage Grader's arguments to the contrary are unpersuasive. First, Mortgage Grader points to this Court's statement in a non-precedential opinion, *Smartflash LLC v. Apple Inc.*, 621 Fed. App'x 995, 1002 (Fed. Cir. 2015), that "*Alice* did not create a new § 101 defense, but rather clarified § 101 jurisprudence." As we have just explained, even an "old" § 101 defense may enjoy renewed vigor in light of *Alice*. More importantly, our statement in *Smartflash* was in an entirely different context: review of denial of a motion to stay pending Covered Business Method review, where the alleged infringer waited until four months after *Alice* was decided (by which time a jury trial had been completed) and argued that "the stage of litigation facing the court is irrelevant to its right to a stay." *Id.* We found no abuse of discretion in the trial court's decision to deny a stay in such circumstances. Here, we conclude similarly that the court did not abuse its discretion in finding that Appellees acted diligently by adding the § 101 defense just two months after *Alice* came down, satisfying the "good cause" standard imposed by S.P.R. 4.2.2. The standard of review employed in both *Smartflash* and here cannot be removed from the results reached in each case—in neither instance did the district court abuse the broad discretion afforded it.

Next, Mortgage Grader argues we should reverse the district court for failing to consider whether Mortgage Grader would be prejudiced by adding Appellees' § 101 defense back into the case. Mortgage Grader concedes that it failed to present arguments related to prejudice to the district court; thus, its contention here is waived. *See Triton Tech of Tex., LLC v. Nintendo of Am., Inc.*, 753 F.3d 1375, 1379–80 (Fed. Cir. 2014). In any event, S.P.R.

4.2.2 does not reference prejudice—unlike S.P.R. 4.3, relating to amendment or supplementation of expert reports, which "are presumptively prejudicial," J.A. 71, and unlike several Patent Local Rules in the Northern District of California, *see, e.g.*, *Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 1322028, at *2 (N.D. Cal. Mar. 28, 2014) (discussing Patent Local Rule 3-6 related to amending contentions).[5] The district court did not abuse its discretion by failing to consider prejudice when it applied a rule that does not require consideration of prejudice. Additionally, Mortgage Grader has done nothing to persuade us that it was unfairly prejudiced by Appellees' amendment, as it has identified nothing (e.g., discovery, claim construction) it would have done differently if it had been given more time to respond to the § 101 defense. At the time Appellees amended their final invalidity contentions, "(1) expert depositions had not yet occurred, (2) Mortgage Grader had its full length of time to prepare rebuttal expert reports, and (3) there was still approximately a month and a half until the close of discovery." J.A. 894. Mortgage Grader had adequate time to develop its response to the § 101 defense.

Thus, the district court did not abuse its discretion. We affirm the denial of Mortgage Grader's motion to strike.

---

[5] Mortgage Grader cites *O2 Micro* as support for a requirement to consider prejudice to the patentee before permitting amendment of invalidity contentions. However, *O2 Micro*—which involved the Northern District of California's Patent Local Rules, not the S.P.R.s—expressly stated that it was not considering "the question of prejudice," as the amending party there had failed to act with diligence. 467 F.3d at 1368.

II

Having concluded that it was proper for the district court to allow Appellees to proceed with their § 101 defense, we must next determine whether the district court properly granted summary judgment that the patents-in-suit are not patent-eligible.  We review a grant of summary judgment under the law of the regional circuit. *Landmark Screens, LLC v. Morgan, Lewis, & Bockius, LLP*, 676 F.3d 1354, 1361 (Fed. Cir. 2012).  "The Ninth Circuit reviews the district court's grant of summary judgment de novo." *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1355 (Fed. Cir. 2009) (citing *Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004)).  "We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Universal Health*, 363 F.3d at 1019.

A

Under § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  There are three exceptions to § 101's broad patent-eligibility principles: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980).  In *Mayo*, the Supreme Court set out a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355.  First, courts must determine if the claims at issue are directed to a patent-ineligible concept. *See id.* If not, the inquiry ends, as the claims are patent-eligible. But if so, the next step is to look for an "'inventive con-

cept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* (internal quotation marks omitted).

The district court carefully and correctly applied this two-step framework to the patents-in-suit.[6]  Regarding step 1, we agree with the district court that the asserted claims are directed to the abstract idea of "anonymous loan shopping." *Mortgage Grader II*, 89 F. Supp. 3d at 1063.  The claim limitations, analyzed individually and "as a whole," *Alice*, 134 S. Ct. at 2359, recite nothing more than the collection of information to generate a "credit grading" and to facilitate anonymous loan shopping.  As the district court explained, the claims specify that "the borrower is anonymous to the lender until the borrower has been informed of the cost of the loan based on the borrower's credit grading, and the borrower then chooses to expose its identity to a lender." *Mortgage Grader II*, 89 F. Supp. 3d at 1063.  The series of steps covered by the asserted claims—borrower applies for a loan, a third party calculates the borrower's credit grading, lenders provide loan pricing information to the third party based on the borrower's credit grading, and only thereafter (at the election of the borrower) the borrower discloses its identity to a lender—could all be performed by humans without a computer.  *Cf. CyberSource Corp. v. Retail*

---

[6]    Although there was neither an agreement by the parties nor a finding by the district court that any one of the asserted claims is representative for purposes of the § 101 analysis, there is also no contention that the claims differ in any manner that is material to the patent-eligibility inquiry.  We have no need to address the four asserted claims individually.  *See generally Alice*, 134 S. Ct. at 2359-60 (finding 208 claims to be patent-ineligible based on analysis of one representative claim).

*Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011) ("[C]omputational methods which can be performed entirely in the human mind are the types of methods that embody the 'basic tools of scientific and technological work' that are free to all men and reserved exclusively to none.") (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Because the claims are directed to an abstract idea, the claims must include an "inventive concept" in order to be patent-eligible. No such inventive concept is present here. Instead, the claims "add" only generic computer components such as an "interface," "network," and "database." These generic computer components do not satisfy the inventive concept requirement. *See Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) ("[T]he interactive interface limitation is a generic computer element."); *buySAFE*, 765 F.3d at 1355 (sending information over network is "not even arguably inventive"); *Accenture Global Servs. GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013) (database components did not make claims patent-eligible). "[A]fter *Alice*, there can remain no doubt: recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible. The bare fact that a computer exists in the physical rather than purely conceptual realm is beside the point." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) (internal citations and quotation marks omitted).

Nothing in the asserted claims "purport[s] to improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field." *Alice*, 134 S. Ct. at 2359. Nor do the claims solve a problem unique to the Internet. *See DDR Holdings*, 773 F.3d at 1257. In addition, the claims are not adequately tied to "a particular machine or apparatus." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). Because the asserted claims are

directed to an abstract idea and nothing in the claims adds an inventive concept, the claims are not patent-eligible under § 101.

## B

Mortgage Grader contends that the district court improperly resolved material factual disputes in connection with granting Appellees' summary judgment motion. We do not agree.

"Summary judgment is appropriate only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *O2 Micro*, 467 F.3d at 1369 (citing Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48. Instead, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The § 101 inquiry "***may*** contain underlying factual issues." *Accenture*, 728 F.3d at 1341 (emphasis added); *see also Arrhythmia Research Tech., Inc. v. Corazonix Corp.*, 958 F.2d 1053, 1055–56 (Fed. Cir. 1992) ("Whether a claim is directed to statutory subject matter is a question of law. Although determination of this question may require findings of underlying facts specific to the particular subject matter and its mode of claiming, in this case there were no disputed facts material to the issue."). But it is also possible, as numerous cases have recognized, that a § 101 analysis may sometimes be undertaken without resolving fact issues. *See, e.g.*, *Accenture*, 728 F.3d at 1346. In such circumstances, the § 101 inquiry may appropriately be resolved on a motion for summary judgment.

It is true that Appellees and Mortgage Grader submitted expert declarations, and the district court acknowledged these materials were in the record. *See Mortgage Grader II*, 89 F. Supp. 3d at 1063. But the court did not rely on them in its § 101 analysis. Instead, in making its patent-eligibility determination, the district court looked only to the claims and specifications of the patents-in-suit. *See id.* at 1061–65. The mere existence in the record of dueling expert testimony does not necessarily raise a genuine issue of material fact. *See, e.g., K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1374–76 (Fed. Cir. 2012) (affirming grant of summary judgment that design patent was not analogous art, despite contrary opinion in expert report); *Minkin v. Gibbons, P.C.*, 680 F.3d 1341, 1351–52 (Fed. Cir. 2012) (indicating that summary judgment of invalidity may be available notwithstanding expert report supporting validity).

Appellees' experts simply provided non-material historical information about how people obtained mortgages in the period before the Internet. This added little if anything to the '694 patent's specification, which observed that "[t]here are newspaper or Internet referral sites which publish interest rates for one or more lenders." '694 patent col. 1, ll. 38–39. Indeed, as Mortgage Grader's expert stated, neither of Appellees' experts "reference[d] the asserted claims, but instead merely explain[ed] the existence of mortgage rate tables published in newspapers during the 1980s and 1990s." J.A. 1470.

Mortgage Grader's expert, Jeffrey Lebowitz, opined that the patents-in-suit solved the problem of information asymmetry between borrowers and lenders, which had previously permitted lenders to "steer" borrowers to predatory loans. But that assertion about problem solving does not by its terms identify claimed process steps. In any event, the claims do not actually contain a "conflict-free requirement." *See Mortgage Grader II*, 89 F. Supp. 3d at 1063. Instead, the claims expressly encom-

pass so-called "independent" third-parties who, in addition to determining a borrower's credit grading, may be "full time employee[s] of an entity providing the desired financial services" and may "receive[] a percentage commission from an affiliated company based on the loans funded through the program." '694 patent col. 10, l. 51 – col. 11, l. 5; '728 patent col. 9, ll. 41–61. Plainly, conflicts-of-interest and predatory lending are still possible when practicing the claims. Mr. Lebowitz's other opinion is that the patents-in-suit require use of a computer. But given the intrinsic evidence, and *Alice*'s clarification that use of a generic computer to implement a "fundamental economic practice" cannot provide an inventive concept sufficient to save claims from patent ineligibility, 134 S. Ct. at 2356–57, this opinion does not create a genuine dispute of material fact.

In sum, no reasonable factfinder could find based on the expert reports that the asserted claims are directed to patent-eligible subject matter.

## CONCLUSION

For the foregoing reasons, the district court did not abuse its discretion in denying Mortgage Grader's motion to strike Appellees' § 101 defense. Nor did the district court err in granting summary judgment to Appellees on that defense. Instead, the district court correctly determined that the asserted claims are directed to patent-ineligible subject matter.

## AFFIRMED

No costs.