NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BRAEMAR MANUFACTURING, LLC, CARDIONET, LLC,**

*Plaintiffs-Appellants*

**v.**

**THE SCOTTCARE CORPORATION, AMBUCOR HEALTH SOLUTIONS, INC.,**

*Defendants-Appellees*

---

2019-2263

---

Appeal from the United States District Court for the Eastern District of Pennsylvania in No. 2:12-cv-02516-PBT, Judge Petrese B. Tucker.

---

Decided:  July 1, 2020

---

RYAN C. MORRIS, Sidley Austin LLP, Washington, DC, argued for plaintiffs-appellants.  Also represented by CHING-LEE FUKUDA, BRADFORD J. BADKE, TODD MATTHEW SIMPSON, New York, NY; NATHAN A. GREENBLATT, Palo Alto, CA.

KEVIN DOOLEY KENT, Conrad O'Brien, Philadelphia, PA, argued for defendants-appellees.  Also represented by

JOHN   GUERNSEY,   MEGHAN   A.   FARLEY,   ANDREW   S.
GALLINARO.

————————

Before LOURIE, DYK, and CHEN, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Braemar Manufacturing, LLC and CardioNet, LLC (collectively "CardioNet") appeal from two decisions of the United States District Court for the Eastern District of Pennsylvania holding that the asserted claims of U.S. Patents 7,941,207 ("the '207 patent), 7,212,850 ("the '850 patent"), 7,907,996 ("the '996 patent"), and 7,587,237 ("the '237 patent") are ineligible for patent under 35 U.S.C. § 101. *CardioNet, LLC v. ScottCare Corp.*, 388 F. Supp. 3d 442 (E.D. Pa. 2019); *CardioNet, LLC v. ScottCare Corp.*, 325 F. Supp. 3d 607 (E.D. Pa. 2018).

In light of our recent decisions in *CardioNet, LLC v. InfoBionic, Inc.*, No. 20-1018 (Fed. Cir. July 1, 2020), and *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358 (Fed. Cir. 2020), we affirm as to the '850 and '996 patents, vacate the district court's judgment of ineligibility of the asserted claims of the '207 patent, and remand for further proceedings on the '207 patent. Because we conclude that the asserted claims of the '237 patent recite patent-ineligible subject matter, we affirm the district court's decision with respect to that patent.

## BACKGROUND

CardioNet owns the '207, '850, '996, and '237 patents (collectively "the asserted patents"), which are generally directed to systems and methods for cardiac monitoring. In 2012, CardioNet sued The ScottCare Corporation ("ScottCare") for infringement of the asserted patents in the Eastern District of Pennsylvania. Subsequently in 2015, CardioNet sued InfoBionic, Inc. for infringement of the '850 and '996 patents in the District of Massachusetts.

In 2017, CardioNet brought an additional claim against In-foBionic in the District of Massachusetts for infringement of the '207 patent.

On May 4, 2017, the Massachusetts district court issued an order determining that certain claims of the '850 and '996 patents are ineligible for patent under 35 U.S.C. § 101. *CardioNet, LLC v. InfoBionic, Inc.*, 2017 WL 1788650 (D. Mass. 2017) ("*'850/'996 Mass. Decision*"). Thereafter, in this case, ScottCare filed a motion for judgment on the pleadings as to the '850 and '996 patents, arguing that CardioNet was collaterally estopped from continuing to assert infringement of those patents based on the determination of ineligibility in the *'850/'996 Mass. Decision*. The Pennsylvania district court granted ScottCare's motion on July 12, 2018. *CardioNet, LLC v. ScottCare Corp.*, 325 F. Supp. 3d 607, 613 (E.D. Pa. 2018).

On September 11, 2018, ScottCare filed an additional motion for judgment on the pleadings, arguing that the asserted claims of the '207 and '237 patents are ineligible for patent under § 101. Before the Pennsylvania district court ruled on ScottCare's motion, the Massachusetts district court issued a second order determining that claims 1–3, 7, 10–12, and 22 of the '207 patent are ineligible for patent under § 101. *CardioNet, LLC v. InfoBionic, Inc.*, 348 F. Supp. 3d. 87 (D. Mass. 2018) ("*'207 Mass. Decision*"). In this case, CardioNet also asserted claims 8, 9, 21, and 23 of the '207 patent. ScottCare filed additional briefing in the Pennsylvania district court arguing that CardioNet was collaterally estopped from continuing to assert infringement of all asserted claims of the '207 patent based on the *'207 Mass. Decision*, including the claims that were not specifically addressed by the Massachusetts district court.

On July 11, 2019, the Pennsylvania district court granted ScottCare's motion. *CardioNet, LLC v. ScottCare Corp.*, 388 F. Supp. 3d 442 (E.D. Pa. 2019) ("*'207/'237 Pa. Decision*"). Regarding the '207 patent, the district court

held that CardioNet was collaterally estopped from assert-ing claims 1–3, 7, 10–12, and 22 of the '207 patent based on the *'207 Mass. Decision*. *Id*. at 460. The court held that CardioNet was also collaterally estopped from asserting claims 8, 9, 21, and 23, which were not addressed in the *'207 Mass. Decision*, because the court determined that the differences between those claims and the previously-adju-dicated claims do not materially alter the question of valid-ity under § 101. *Id*. at 462–66.

Regarding the '237 patent, the court determined that the asserted claims are ineligible for patent under § 101. The district court treated claims 25 and 37 as representa-tive of those asserted, and CardioNet does not challenge that determination on appeal. Claim 37 recites:

> 37. An article comprising one or more machine-readable media storing instructions operable to cause one or more machines to perform operations for monitoring a cardiac biological signal using electrocardiographic monitoring instrumentation, the operations comprising:
>
> receiving a cardiac biological signal that includes information describing events, wherein events comprise periods in time when an information con-tent of the cardiac biological signal is of increased relevance to a particular purpose and the events are demarcated by periods of time that are not of increased relevance to the particular purpose;
>
> determining a measure of merit of information de-scribing each event, wherein the measure of merit embodies both the severity of the cardiac condition indicated by the information describing the event and an amount of noise in the information describ-ing the event;
>
> comparing the measure of merit of information de-scribing the event with a merit criterion;

transmitting, for medical purposes, information describing a first proper subset of the events that have measures of merit meeting the merit criterion to a remote medical receiver; and

discarding information describing a second proper subset of the events that have measures of merit that fail to meet the merit criterion.

'237 patent col. 18 l. 59–col. 20 l. 3.

The district court considered the claims of the '237 patent under the Supreme Court's two-step *Alice* framework for determining patent-eligibility. At step one, the court determined that the claims are directed to the abstract idea of "collecting, classifying, or otherwise filtering data into different groups based on identifying characteristics and transmitting relevant information for review." *'207/'237 Pa. Decision*, 388 F. Supp. 3d at 454. At step two, the court concluded that "[t]he claim elements, individually or collectively, recite performing the abstract idea with conventional technology and fail to provide any specific, inventive technological improvement." *Id*. at 456.

The district court entered final judgment of patent invalidity of the '207, '237, '850, and '996 patents in favor of ScottCare, and CardioNet appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review a district court's grant of judgment on the pleadings under Rule 12(c) according to the law of the regional circuit. *Allergan, Inc. v. Athena Cosmetics, Inc.*, 640 F.3d 1377, 1380 (Fed. Cir. 2011) (citing *Imation Corp. v. Koninklijke Philips Elecs. N.V.*, 586 F.3d 980, 985 (Fed. Cir. 2009)). The Third Circuit reviews orders granting judgment on the pleadings *de novo*. *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (citing *Allah v. Al–Hafeez*, 226 F.3d 247, 249 (3d Cir. 2000)).

## I. '207 Patent

This court recently reversed the *'207 Mass. Decision* and held that claims 1–3, 7, 10–12, and 22 of the '207 are patent-eligible. *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358 (Fed. Cir. 2020). Here, CardioNet has also asserted claims 8, 9, 21, and 23. Because the judgment underlying the district court's application of collateral estoppel has been reversed, we vacate the district court's judgment of ineligibility of all of the asserted claims of the '207 patent and remand for further proceedings.

## II. '850 and '996 Patents

This court recently affirmed the *'850/'996 Mass. Decision* holding that claims 1–3, 5–6, 8–9, 21, and 31–32 of the '850 patent and claims 12 and 23 of the '996 patent are patent-ineligible. *CardioNet v. InfoBionic, Inc.*, No. 20-1018, slip op. at 2 (Fed. Cir. July 1, 2020). Here, CardioNet has asserted claims 31 and 32 of the '850 patent and claims 1, 12, and 23 of the '996 patent. Because the judgment underlying the district court's application of collateral estoppel has been affirmed and CardioNet does not otherwise argue that the district court erred in its application of the doctrine, we affirm the district court's judgment of invalidity of claims 31 and 32 of the '850 patent and claims 12 and 23 of the '996 patent. Because claim 1 of the '996 patent recites materially indistinct subject matter from claim 12, we affirm the district court's judgment of invalidity of that claim as well.

## III. '237 Patent

We now address the eligibility of the asserted claims of the '237 patent. Patent eligibility under § 101 is an issue of law that may involve underlying issues of fact. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (citing *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1325 (Fed. Cir. 2016)). We review the district

court's ultimate conclusion on patent eligibility *de novo*. *Id*.

To determine whether a patent claims eligible subject matter, we follow the Supreme Court's familiar two-step framework. *See Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70–73 (2012). First, we determine whether the claims are directed to a law of nature, natural phenomena, or abstract idea. *Alice*, 573 U.S. at 217. If not, then the claims are patent-eligible, and the inquiry is over. If so, we proceed to the second step and determine whether the claims nonetheless include an "inventive concept" sufficient to "'transform the nature of the claim' into a patent-eligible application." *Id*. (quoting *Mayo*, 566 U.S. at 72–73, 78).

The '237 patent is entitled "Biological Signal Management" and describes methods for selectively transmitting or discarding data acquired from a cardiac signal based on relevance. The methods begin by receiving a cardiac signal and identifying "events" in the received signal. '237 patent col. 8 ll. 34–39. An event is a period in time when the information content of the signal "is deemed to be of increased relevance to a particular purpose." *Id*. col. 4 ll. 21–23. Events are classified into categories based on identified characteristics, and what is referred to as a "measure of merit" is determined for each event. *Id*. col. 8 ll. 39–43. A measure of merit is "a valuation of an event when applied to a particular purpose." *Id*. col. 8 ll. 44–46. The measure of merit can be based on, among other factors, the severity of the event and the amount of noise in the signal during the event. *Id*. col. 10 ll. 52–54. For each event, the measure of merit is compared to a "merit criterion" and, if the measure of merit is less than the merit criterion, the event is discarded. *Id*. col. 8 ll. 65–67.

On appeal, CardioNet argues that the asserted claims are not directed to an abstract idea, but rather to improved

electrocardiographic monitoring systems. According to CardioNet, the claimed methods increase the relevance of data presented to physicians by automatically identifying and discarding less clinically-significant events. Even if directed to an abstract idea, CardioNet argues that the measure of merit—a new algorithm "unlike anything available in the cardiac-monitoring field"—is an inventive concept that transforms the claims into a patent-eligible application. Appellants' Br. 51.

ScottCare responds that the claims are directed to the abstract idea of collecting, classifying, and filtering data. And because the claims merely implement those steps using conventional computer technology, ScottCare argues, they do not contain an inventive concept.

We agree with ScottCare. For computer-implemented method claims, whether the claims are directed to an abstract idea at *Alice* step one "often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool.'" *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018) (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016)). Here, the purported improvement is the abstract idea of classification and filtering of data, not an improvement in the functioning of computer capabilities. On their face, the claims are directed to collecting ("receiving a cardiac biological signal"), classifying ("classifying the events"), and filtering data into groups based on identifying characteristics ("determining a measure of merit," "comparing the measure of merit"), and transmitting the data for review. Claims that "merely collect, classify, or otherwise filter data" are ineligible for patent under § 101. *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017).

CardioNet argues that the claims are drawn to specific technological improvements, but nothing in the claims requires more than generic data manipulation. For example, the written description explains that events can be categorized based on identifying characteristics and includes tables associating exemplary characteristics with event categories. '237 patent col. 4 ll. 34–42. Thus, categorizing events amounts to nothing more than matching characteristics to predefined categories. Similarly, the patent discloses two methods for determining the measure of merit. Like event categorization, a first method operates based on a simple lookup table, where event categories are matched to a predetermined grade of severity. *Id*. col. 9 ll. 59–62. A second method determines severity by selecting and applying a particular equation associated with the appropriate event category. *Id* col. 10 ll. 4–24. Both methods require only basic data processing, and neither is the sort of improvement to computer functionality that can make software claims non-abstract. Accordingly, we conclude that the claims are directed to the abstract idea of collecting, classifying, and filtering data.

Having concluded that the claims are directed to an abstract idea, we consider whether the claims describe an inventive concept at step two. CardioNet principally argues that the "measure of merit" is an inventive concept sufficient to transform the claims into a patent-eligible application. However, as explained above, the measure of merit amounts at most to the execution of a mathematical formula or selection from a lookup table. The measure of merit, then, is no more than a mental process, capable of performance in the human mind or with pen and paper, and is therefore itself an abstract idea. *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016). The remaining claim limitations recite only routine data manipulation, which can be performed by a generic computing device. Accordingly, whether considered individually or as an ordered combination, the claims

recite only the implementation of abstract ideas with conventional techniques and do not recite an inventive concept.

### CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed as to the '237, '850, and '996 patents, vacated as to the '207 patent, and remanded for further proceedings on the '207 patent.

**AFFIRMED-IN-PART, VACATED-IN-PART, AND
REMANDED**